**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

IN RE:

APPLICATION OF IOV LABS LIMITED
FOR AN ORDER UNDER 28 U.S.C. § 1782
TO TAKE DISCOVERY FROM MARK
LEVIN

Case No. 1:22mc20206

## APPLICATION FOR AN ORDER TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

Applicant IOV Labs Limited ("IOV Labs" or the "Applicant") respectfully submits this application for an order to take discovery under 28 U.S.C. § 1782 (the "Application") from Mark Levin. IOV Labs requests this relief for the purpose of obtaining limited—but critical—discovery for use in reasonably contemplated proceedings that are expected to be commenced in the civil courts of the Netherlands and/or the British Overseas Territory of Gibraltar.

### PRELIMINARY STATEMENT

This application for discovery stems from a dispute between IOV Labs and several financial contributors who purchased cryptographic tokens from IOV Labs, including Levin. In a series of letters sent over the course of 2021, Levin, Megalodon DMCC, and Esteban van Goor (collectively, the "Complainants") have confirmed their intent to press forward with litigation against IOV Labs under a disparate slew of legal theories, ranging from identity theft, to defamation, to fraud, and alleging violations of civil and criminal laws in place in no fewer than seven separate jurisdictions. At bottom, however, Complainants' allegations arise from their dissatisfaction over the value of certain cryptographic tokens they purchased from IOV Labs in exchange for early financial contributions.

1

Over time, Complainants' missives have crystallized into specific threats of litigation in the Netherlands and/or the British Overseas Territory of Gibraltar. For the reasons set forth below, the Court should grant IOV Labs's application under 28 U.S.C. § 1782 ("Section 1782") seeking discovery from Levin on certain issues likely to arise in these foreign proceedings.

*First*, the Application meets the statutory requirements set forth in Section 1782. IOV Labs seeks discovery from Levin, on whom IOV Labs intends to serve with the attached subpoena while Levin is physically present in the Southern District of Florida. (*See* Ex. B (the "Subpoena").) Once served, Levin will have been "found" within the District for purposes of Section 1782. *See, e.g.*, *In re Kurbatova*, No. 18-mc-81554 (BLOOM), 2019 WL 2180704, at *2 (S.D. Fla. May 20, 2019) ("[I]f an entity is personally served with a subpoena while physically present in this district (otherwise known as 'tag' jurisdiction), that person is 'found' within the district for purposes of § 1782."). The materials IOV Labs seeks are "for use" in reasonably contemplated—indeed, threatened as imminent—foreign proceedings arising out of the Complainants' dispute with IOV Labs. And IOV Labs, as a prospective defendant, is an "interested person" in those reasonably contemplated foreign proceedings, in which it would have the right to submit evidence collected through this Application and the Subpoena.

*Second*, the discretionary factors to be considered—those set forth in the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)—weigh in favor of granting the Application. The Application and the Subpoena seek evidence for use in foreign jurisdictions that are receptive to U.S. judicial assistance; the Application is not an attempt to circumvent foreign proof-gathering restrictions; the Subpoena is not unduly burdensome; and because Levin may not be a party to the contemplated foreign proceedings, it is far from clear that IOV Labs would be able to obtain the evidence sought here through those proceedings.

Accordingly, the Court should grant this Application.

## JURISDICTION

1.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1782(a).

## RELEVANT PARTIES

2.      The Applicant, IOV Labs, is a limited liability company incorporated under the laws of the British Overseas Territory of Gibraltar. IOV Labs develops technologies designed to facilitate the use of blockchain transactions, including RootStock (or "RSK"), the first smart-contract platform secured by the Bitcoin network, and the RSK Infrastructure Framework Open Standard (or "RIFOS"), which supports RSK users with smart-contract libraries, scalable and high-speed transaction processing, secure communication protocols, naming and directory services, and encrypted data storage.

3.      Mark Levin is a citizen of Canada and, on information and belief, a resident of the Netherlands. Levin was an early equity investor in RSK Labs Limited ("RSK Labs"), a company that first developed the RSK platform and which was acquired by IOV Labs in November 2018. In addition to this equity investment, Levin purchased cryptographic tokens which IOV Labs issued to raise funds for further development of its business projects, including the RSK platform and the RIFOS protocols.

4.      Megalodon DMCC ("Megalodon") is a company registered with the Dubai Multi Commodities Centre and the successor-in-interest to Megalodon Capital Management B.V. ("Megalodon Capital"), a since-dissolved Dutch entity that, like Levin, purchased cryptographic tokens as part of a capital fundraising initiative for IOV Labs.

5.      Esteban van Goor is a citizen of the Netherlands and the Managing Partner and Owner of Megalodon.

6.      Levin, Megalodon, and van Goor (collectively, the "Complainants") have, individually and through counsel, sent several rounds of correspondence threatening to commence litigation against IOV Labs in the Netherlands and/or the British Overseas Territory of Gibraltar.

## FACTUAL BACKGROUND

7.      The idea behind RSK—IOV Labs' proprietary smart-contract platform—was first conceived in 2015. RSK was first promoted to the public in a white paper released in November of that year.

8.      In early 2016, a group of six founders launched RSK Labs, a company incorporated in the British Virgin Islands, for the purpose of raising capital to develop the RSK platform. Within months, RSK Labs had closed its first round of investment, raising US $1 million.

9.      Levin was an early equity investor in RSK Labs, investing 22.0761 bitcoin under a Series Seed Preferred Share Purchase Agreement (the "SPA") dated March 23, 2017.

10.     In December 2017, the founders of RSK Labs incorporated IOV Labs in Gibraltar, seeking to expand the offerings available to RSK users and raise additional financing for that purpose.

11.     In May 2018, Levin and Megalodon entered into Early Contribution Agreements ("ECAs") with IOV Labs as part of a fundraising campaign designed to finance the development of the RIFOS protocols. Under the ECAs, Levin and Megalodon Capital paid IOV Labs 400 and 300 bitcoin, respectively, in exchange for cryptographic tokens (the "RIF Tokens") issued by IOV Labs. By their express terms, the ECAs are governed by Gibraltar law.

12.     On or around July 19–20, 2018, Levin and Megalodon Capital purported to transfer their RIF Tokens and assign the associated rights to Megalodon under a pair of Transfer & Assignment Agreements (the "T&As"). Three months later, Megalodon Capital was dissolved.

13.      In November 2018, IOV Labs acquired RSK Labs and two affiliated entities, Smart Labs S.A. and Cactus Technologies LLP, from RSK's shareholders, including Levin.

14.      On February 18, 2021, Megalodon sent a letter on behalf of the Complainants to more than 10 different officers, employees, and agents of IOV Labs (the "February 18 Letter"). A true and correct copy of the February 18 Letter is attached as **Exhibit 1** to the accompanying Declaration of Alejandro Aberg Cobo (*See* Ex. A (the "Aberg Cobo Declaration")).

15.      Over the course of 81 rambling pages, Megalodon alleged—albeit with scant factual detail—that IOV Labs had, among other things:

    a.  violated unspecified "Securities Law[s], "Money Laundering Law[s]," and "Wire Fraud Law[s]";
    b.  committed "Insider Trading" and "Identity Theft";
    c.  incurred liability for "Unjust Enrichment," "Slander and Defamation," and "Unfair Business Practices";
    d.  perpetrated an "International Fraud Scheme"; and
    e.  engaged in conduct violating over 30 different laws or regulations in place in the European Union, the United Kingdom, the Netherlands, Gibraltar, the United States, and Turkey.

16.      Counsel for IOV Labs responded to Megalodon on March 4, 2021, requesting more specifics about the wild allegations made in the February 18 Letter. On March 16, 2021, Megalodon replied (the "March 16 Letter"). A true and correct copy of the March 16 Letter is attached as **Exhibit 2** to the Aberg Cobo Declaration.

17.      Among other things, the March 16 Letter specified the Netherlands and Gibraltar as jurisdictions in which the Complainants intended to initiate legal proceedings.

18.      Megalodon reiterated that position in another letter dated April 22, 2021, in which it again identified the Netherlands and Gibraltar as target jurisdictions for seeking legal recourse from IOV Labs (the "April 22 Letter"). A true and correct copy of the April 22 Letter is attached as **Exhibit 3** to the Aberg Cobo Declaration.

19.     On September 10, 2021, counsel for the Complainants sent IOV Labs (and others) yet another letter, which expounded upon the purported basis for the Complainants' contemplated claims (the "September 10 Letter"). A true and correct copy of the September 10 Letter is attached as **Exhibit 4** to the Aberg Cobo Declaration.

20.     In the September 10 Letter, counsel for the Complainants alleged that IOV Labs used the capital raised through the sale of the RIF Tokens—including those originally sold to Levin and Megalodon Capital—for purposes inconsistent with the terms of the ECAs. Specifically, the September 10 Letter asserted that, rather than using the funds raised through the sale of the RIF Tokens "on researching, developing and promoting the RIFOS Protocols," IOV Labs used those funds instead on a series of unrelated and unauthorized projects.

21.     IOV Labs categorically rejects the allegation that it has violated the terms of the ECAs or misused contributor funds in any way. Although IOV Labs has made various good-faith efforts to dissuade Megalodon from proceeding with its threatened claims, on October 28, 2021, Megalodon's attorneys sent IOV Labs formal notice "to inform [IOV Labs] that our clients have now decided to proceed to pursue their claims."

### RELIEF REQUESTED

22.     In light of Megalodon's notice announcing its decision to proceed with its ill-advised claims, IOV Labs now requests permission to gather evidence from Levin to defend itself against the foreign proceedings that Levin and the other Complainants intend to commence. These contemplated foreign proceedings include potential civil proceedings in the courts of the Netherlands and/or the British Overseas Territory of Gibraltar.

23.     In support of these proceedings, IOV Labs seeks permission to issue the attached Subpoena for documents and testimony upon Levin while he is physically present in this District.

## MEMORANDUM OF LAW

To obtain discovery under Section 1782, an applicant must satisfy two sets of criteria. First, the applicant must meet the requirements of the statute itself, which allows for discovery by an "interested person" in "the district in which [the discovery target] resides or is found . . . for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Second, the court, in its exercise of discretion, must find that granting discovery would be appropriate in view of certain factors prescribed by the Supreme Court. *See Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014); *Intel*, 542 U.S. at 264–65.

The twin goals of Section 1782 are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to U.S. courts." *Intel*, 542 U.S. at 252; *see also, e.g., In re Pimenta*, 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (finding the granting of a Section 1782 application for discovery in aid of a Brazilian probate proceeding "serves to support the twin aims of the statute"). To that end, as the Eleventh Circuit emphasized in *Consorcio Ecuatoriano*, "[t]he history of Section 1782 reveals Congress' wish to *strengthen* the power of district courts to respond to requests for international assistance." 747 F.3d at 1269 (quoting *Lo Ka Chun v. Lo To*, 858 F.2d 1564, 1565 (11th Cir. 1988)). Indeed, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotation marks omitted).

Because IOV Labs satisfies both sets of criteria, the Court should grant the Application.

## I.    The Application meets the statutory prerequisites for relief under Section 1782.

Section 1782 authorizes discovery by litigants or other "interested persons" in proceedings before foreign and international tribunals. It provides:

> The district court of the district in which a person resides or is found
> may order him to give his testimony or statement or to produce a
> document or other thing for use in a proceeding in a foreign or
> international tribunal . . . The order may be made pursuant to a letter
> rogatory issued, or request made, by a foreign or international
> tribunal or upon the application of any interested person and may
> direct that the testimony or statement be given, or the document or
> other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

Section 1782 thus has four threshold requirements that must be met before a district court is

authorized to grant an application for discovery under that statute:

- the request must be made "by a foreign or international tribunal," or by "any interested person" in connection with a pending or reasonably contemplated proceeding before such a tribunal;

- the request must seek evidence in the form of the "testimony or statement" of a person and/or the production of "document[s]" or "other thing[s]";

- the evidence must be "for use" in the foreign proceeding; and

- the person from whom discovery is sought must "reside[]" or be "found" within the district where the relief is sought.

*See Consorcio Ecuatoriano*, 747 F.3d at 1269.

The Application satisfies all four threshold requirements.

*First*, as a prospective litigant in the proceedings with which Levin and the other

Complainants have threatened it, IOV Labs is necessarily an "interested person" within the

meaning of the statute. *See Intel*, 542 U.S. at 256 (noting that "litigants are included among, and

may be the most common example of, the "interested person[s]" who may invoke § 1782").

*Second*, the Application seeks evidence, which has been defined in the context of Section

1782 as the "'testimony or statement' of a person or the production of 'a document or other thing.'"

*Consorcio Ecuatoriano*, 747 F.3d at 1269. Specifically, the Application seeks both a deposition

and certain categories of relevant documents from Levin that IOV Labs will use as evidence to

defend itself in the foreign proceedings.

*Third*, the evidence is "for use in a proceeding in a foreign . . . tribunal." The "for use" requirement imposes a *de minimis* burden on the applicant to show that the requested discovery has some relevance to the foreign proceedings. *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Orders Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (explaining that standard for relevance is "broadly permissive"). IOV Labs will use the evidence sought through this Application in the foreign proceedings. As the Subpoena makes clear (and as discussed further below), the evidence IOV Labs seeks is relevant to defenses it may assert in the contemplated foreign proceedings.

That the foreign proceedings are not yet pending does not alter this analysis. Foreign proceedings that are "within reasonable contemplation" can be the basis for a Section 1782 application where there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Consorcio Ecuatoriano*, 747 F.3d at 1270. On multiple occasions over the better part of a year, the Complainants have threatened IOV Labs with civil proceedings in one or several foreign jurisdictions. (*See* Aberg Cobo Decl. Exs. 2, 3.) And in the most recent correspondence between the disputing parties, counsel for Complainants formally notified counsel for IOV Labs that the Complainants "have now decided to proceed to pursue their claims" against IOV Labs.

*Fourth*, once served with the Subpoena in this District, Levin will have been "found" here within the meaning of Section 1782. Courts within this District and elsewhere have held that "if an entity is personally served with a subpoena while physically present in [the] district (otherwise known as 'tag' jurisdiction), that person is 'found' within the district for purposes of § 1782." *Kurbatova*, 2019 WL 2180704, at *2; *see also In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) (reasoning that "the question of what it means to be found in a particular locale is already the

subject of well-settled case law on territorial jurisdiction," which "authorize[s] the exercise of personal jurisdiction based on nothing more than physical presence," and holding that because "so-called tag jurisdiction is consistent with due process . . . § 1782(a), which is simply a discovery mechanism and does not subject a person to liability" requires no more) (internal citations omitted).

**II.      The discretionary *Intel* factors weigh in favor of granting relief under Section 1782.**

In deciding whether to exercise its discretion to permit the Section 1782 discovery, the Court should consider the following factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. These factors support granting the Application.

> 1. *Because he assigned his RIF Tokens and the associated rights to Megalodon, it is not clear that Levin will be a party to the contemplated proceedings, and thus uncertain whether IOV Labs will be able to obtain through those proceedings the same evidence sought here.*

The first *Intel* factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceeding." The Supreme Court has explained that when the discovery target is a participant in the foreign proceeding, "the need for § 1782 aid is *generally* not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* at 264 (emphasis added).

To begin with, it is far from clear that Levin will be a party in the contemplated foreign proceedings. Although the Complainants' stream of threats and demands repeatedly lists Levin as

10

a "claimant," Levin transferred all of his RIF Tokens and the associated rights to Megalodon through a Transfer & Assignment Agreement. Accordingly, there is no guarantee that Levin will—or, indeed, even could—initiate a legal proceeding in any of the threatened jurisdictions to vindicate rights that he has assigned to another party. To the extent that Levin may not be a party to any of the contemplated foreign proceedings, this factor weighs in favor of granting the Application.

In addition, being a participant in a pending or contemplated foreign proceeding is not dispositive, and federal courts often order Section 1782 discovery from parties who are directly involved in foreign proceedings when there is doubt about whether the requested material is obtainable through that proceeding. *See, e.g., In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1114 (E.D. Wis. 2004) (granting application even though applicant and respondent were both parties to foreign proceedings because it was "unclear whether [the applicant] could obtain discovery in [the foreign proceeding] in time to use it"); *In re Application of Carsten Rehder Schiffsmakler Und Reederei Gmbh & Co.*, No. 6:08-mc-108 (ORL), 2008 WL 4642378, at *2 (M.D. Fla. Oct. 17, 2008) (granting application where applicant and respondent were both parties to foreign proceedings because "China's rules relating to discovery are not comparable to our own and . . . obtaining the information without this Court's assistance is by no means assured"); *In re Letter Request from Dist. Ct. Stara Lubovna*, No. 3:09-mc-2034 (MCR), 2009 WL 3711924, at *2 (M.D. Fla. Nov. 5, 2009) (finding that first *Intel* factor weighed in favor of applicant, even though respondent was a party to foreign proceeding, because respondent had left foreign court's jurisdiction, making it unlikely that foreign court could compel him to produce discovery).

**2. *The foreign proceedings are contemplated in one or more jurisdictions that are receptive to U.S. judicial assistance.***

The receptivity of foreign proceedings to U.S. judicial assistance weighs in favor of permitting discovery under Section 1782 unless there is "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re Application of MTS Bank*, No. 17-mc-21545 (WILLIAMS), 2017 WL 3276879, at *8 (S.D. Fla. Aug. 1, 2017) (emphasis in original).

There is no such proof that would justify denying the Application. To the contrary, the Complainants have on multiple occasions identified the Netherlands as their "first option" (*see* Aberg Cobo Decl. Ex. 2 at 2), and that country has been recognized by other district courts as receptive to evidence obtained through Section 1782. *See, e.g., In re Stati*, No. 15-mc-91059 (LTS), 2018 WL 474999, at *7 (D. Mass. Jan 18, 2018) ("[T]here is little reason to suspect that the Swedish, Netherlands, or Belgian tribunals would not be receptive to the discovered evidence.").[1]

**3. *The Application is not an attempt to circumvent foreign proof-gathering restrictions.***

In assessing this factor, "courts need not determine if an applicant has exhausted its discovery attempts abroad," and "the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." *See In re N. Am. Potash*, No. 12-cv-20637 (WILLIAMS), 2012 WL 12877816, at *11 (S.D. Fla. Nov. 9, 2012). Rather, "this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *Id.* (alteration in original).

---

[1] While IOV Labs is unaware of any decision addressing the receptivity of Gibraltar's courts to foreign assistance, courts across the country—including in this District—have repeatedly recognized that the closely related English courts welcome evidence obtained under Section 1782. *See, e.g., In re England/Bahamas*, No. 20-mc-61696 (SMITH), 2021 WL 3270074, at *6 n.13 (S.D. Fla. July 30, 2021).

IOV Labs has made no such attempt to undercut decisions rendered in foreign proceedings; indeed, as noted above, the proceedings that Complainants have decided to initiate against IOV Labs have yet to be commenced. Rather, IOV seeks documents for use in those contemplated proceedings that it may not be able to obtain from Levin via any other means. Moreover, if questions later arise about the admissibility of the discovery sought by IOV Labs under Dutch or Gibraltar law, those questions can be addressed fully by the courts of those jurisdictions regardless of whether this Court grants the Application. As one court has explained, "[s]ince foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them, the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (quoting Hans Smit, *Recent Devs. in Int'l Litig.*, 35 S. TEX. L. REV. 215, 235–36 (1994)).

4.   *The discovery sought in the Application and the Subpoena is not unduly burdensome.*

IOV Labs seeks a narrow set of documents and deposition testimony on topics likely to be relevant to (or lead to the discovery of other evidence relevant to) the contemplated foreign proceedings. (*See* Ex. B.) The vast majority of document requests in the Subpoena merely seek documents that Megalodon may use to substantiate the legal claims with which it has now threatened IOV Labs for nearly a year—materials that one would expect Levin and his counsel have already collected in light of their apparent collaboration with Megalodon. The remaining requests seek information relating to certain defenses that may be available to IOV Labs in the contemplated foreign proceedings. These include, for example, defenses based on Levin's understanding of the terms of the ECA and related transaction documents, his awareness of the use of proceeds he and the other Complainants now deride as "fraudulent," and his own conduct.

13

"Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26–36, contains the relevant practices and procedures for the taking of testimony and the production of documents." *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007). Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Under the Federal Rules of Civil Procedure, requests to produce can be directed at any document or thing in the possession, custody, or control of the producing party. Fed. R. Civ. P. 26(b).

Finally, the fact that Levin may need to bring information into the district is not a basis for denying the application; to the contrary, Eleventh Circuit law expressly permits the use of Section 1782 to seek any evidence, regardless of location, from a person who "resides or is found" in the district where the application is filed. *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (holding that nothing in Section 1782 applies territorial limitations beyond those imposed by regular discovery rules, which require production of extraterritorial documents); *accord In re Emergency Ex Parte Application of Godfrey*, No. 17-cv-21631 (COOKE), 2018 WL 1863749, at *11 (S.D. Fla. Feb. 22, 2018) (noting that the "Eleventh Circuit has held 'that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a per se bar to discovery under § 1782'" and that "[i]t is thus well established in this Circuit that § 1782 has 'extraterritorial reach'" (citation omitted)).

## CONCLUSION

WHEREFORE, Applicant IOV Labs Limited prays for an order of this Court:

    (1) granting discovery under Section 1782, including a document and deposition subpoena as detailed in the proposed subpoena attached to this Application;

(2) ordering that the undersigned counsel be authorized to issue the subpoenas attached to this application to obtain such discovery consistent with the Federal Rules of Civil Procedure; and

(3) granting such other and further relief as this Court deems just and proper.

Dated: Miami, Florida
       January 17, 2022

                              Respectfully submitted,

                              s/ Adriana Riviere-Badell
                              Adriana Riviere-Badell (Florida Bar No. 30572)
                              adriana.riviere-badell@kobrekim.com

                              KOBRE & KIM LLP
                              201 S Biscayne Blvd, Suite 1900
                              Miami, Florida 33131
                              305-967-6117

                              *Attorneys for Applicant IOV Labs Limited*