UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-MC-20206-ALTMAN/REID

In re: APPLICATION OF IOV
LABS LIMITED FOR AN ORDER
UNDER 28 U.S.C. § 1782
TO TAKE DISCOVERY FROM
MARK LEVIN

_____/

### ORDER GRANTING IOV LABS LIMITED'S APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

This cause is before the Court on IOV Labs Limited's ("IOV") Application for judicial assistance in aid of discovery in foreign proceeding pursuant to 28 U.S.C. § 1782 (the "Application"). [ECF No. 1]. For the reasons stated below, the Application is **GRANTED.**

### BACKGROUND

The Application involves a dispute between IOV, a limited liability company incorporated under the laws of the British Overseas Territory of Gibraltar ("Gibraltar"), and "several financial contributors who purchased cryptographic tokens from IOV," including the target of the Application, Mark Levin ("Levin"), a Canadian citizen and resident of the Netherlands. [ECF No. 1 at 1, 3]. Levin, along with an individual named Esteban van Goor, and a foreign corporate entity Megalodon DMCC ("Megalodon"), (collectively the "Complainants"), have expressed dissatisfaction with their purchase of cryptographic tokens from IOV. [*Id.*]. This dissatisfaction has given rise to the imminent threat of the Complainants initiating litigation in the Netherlands and/or Gibraltar. [*Id.* at 1–2]; *see also* [ECF No. 1-1].

IOV developed RootStock ("RSK") and the RSK Infrastructure Framework Open Standard ("RIFOS"), technologies "designed to facilitate the use of blockchain transactions." [*Id.* at 3]. The

1

development of this technology was funded in part by financial contributions, in the form of payment through cryptocurrencies, by Levin and Megalodon's now defunct predecessor in interest, Megalodon Capital Management B.V. ("Megalodon Capital"). [*Id.* at 4]. These contributions were memorialized by Early Contribution Agreements ("ECAs") entered into by IOV, Levin, and Megalodon Capital in May 2018. [*Id.*]. Under the terms of the ECAs, Levin and Megalodon Capital were to pay IOV a specified sum of cryptocurrency, and in exchange IOV would provide Levin and Megalodon Capital with cryptographic tokens ("RIF Tokens"). [*Id.*]. On or around July 19–20, 2018, Levin and Megalodon Capital purported to transfer their RIF tokens to Megalodon through separate Transfer and Assignment Agreements. [*Id.*].

On February 18, 2021, Megalodon sent an 81-page letter to IOV, alleging IOV had engaged in a host of improper activities, including, but not limited to: wire fraud, insider trading, identity theft, international fraud, and unfair business practices. [*Id.* at 5]. The crux of the allegations appears to be Megalodon's assertion that IOV "used the capital raised through the sale of the RIF Tokens—including those originally sold to Megalodon Capital—for purposes inconsistent with the terms of the ECAs … [specifically] rather than using the funds raised … 'on researching, developing and promoting the RIFOS Protocols,' IOV [] used those funds instead on a series of unrelated and unauthorized projects." [*Id.* at 6]. During the exchange of several other letters, Megalodon and the other Complainants expressed, through counsel, their intent to pursue litigation against IOV in the Netherlands and/or Gibraltar. [*Id.* at 5–6]. On October 28, 2021, Megalodon's attorneys provided "formal notice" that Megalodon will pursue its claims against IOV. [*Id.* at 6]. IOV rejects the Complainants' allegations, and asserts it has filed the instant Application in anticipation of any future litigation in the Netherlands and/or Gibraltar. *See generally* [*Id.*].

## DISCUSSION

### I. The Law

Under 28 U.S.C. § 1782(a) a court has the power to grant an application for judicial assistance when the following statutory factors have been met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007) (footnote omitted) (quoting 28 U.S.C. § 1782(a)). When these elements are met, Section 1782 "authorizes, but does not require a federal district court to provide assistance." *In re Clerici*, 481 F.3d at 1332 (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004)). Ultimately, "[w]hether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court." *United Kingdom v. United States*, 238 F.3d 1312, 1318–19 (11th Cir. 2001).

In addition to the statutory factors listed above, the Supreme Court provided a number of other factors courts must consider in determining whether to grant an application brought under Section 1782. *Intel*, 542 U.S. at 264–65. The Eleventh Circuit has summarized the *Intel* factors as follows:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when the evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is

> otherwise "unduly intrusive or burdensome." The Supreme Court in *Intel* added that "unduly intrusive or burdensome requests may be rejected or trimmed."

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel*, 542 U.S. at 264–65). Once a court determines that a *prima facie* case has been established and the pertinent *Intel* factors are satisfied, the "court is therefore authorized to grant the application, [and] 'the federal discovery rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272 (11th Cir. 2014) (quoting *Weber v. Finker*, 554 F.3d 1379, 1384–85 (11th Cir. 2009)).

## II. IOV Has Satisfied Both the Statutory and *Intel* Factors

IOV has satisfied the requirements for this Court to grant its Section 1782 Application. It has established the *prima facie* elements under the statute and the discretionary *Intel* factors weigh in favor of granting the Application. Accordingly, the Application should be granted.

IOV has met is burden in establishing the four *prima facie* statutory requirements. First, as a prospective litigant—specifically the central defendant—in the contemplated proceedings in the Netherlands and/or Gibraltar, IOV is the prototypical "interested party" under Section 1782. *See Intel*, 542 U.S. at 256 (positing that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"). Additionally, IOV has made it clear that based on its dispute with the Complainants, it is facing imminent litigation abroad. *See id.* at 258–59 (finding that "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings … [rather the proceeding must only] be within reasonable contemplation"). Second, the Application seeks both "testimony" and the "production of documents," from Levin and therefore seeks "evidence." [ECF No. 1 at 6, 8]. Third, the evidence IOV seeks is "for use in a proceeding in a foreign or international tribunal" because the

4

Complainants have notified IOV that they intend to litigate their claims in the Netherlands and/or Gibraltar. Lastly, Levin is "found" within this district under Section 1782 because his presence in the district is such that he can be served with a subpoena while in the district and is thus subject to "tag" jurisdiction. *See, e.g., In re Kurbatova*, No. 18-mc-81554, 2019 WL 2180704, at *2 (S.D. Fla. May 20, 2019) (noting that "if an entity is personally served with a subpoena while physically present in this district (otherwise known as 'tag' jurisdiction), that person in 'found' within the district for purposes of § 1782").

Additionally, the *Intel* factors, as a whole, weigh in favor of granting the Application. As to the first *Intel* factor, by IOV's own account, it is unclear whether Levin will be a party to any litigation brought in the Netherlands or Gibraltar. [ECF No. 1 at 10–11]. Given the lack of certainty regarding Levin's status as a potential party to the foreign proceedings, this factor neither weighs in favor of or against granting the Application. *See, e.g., In re Republic of Argentina*, No. 20-MC-20589, 2020 WL 3046029, at *2 (S.D. Fla. Feb. 12, 2020) (noting the first *Intel* factor weighs in the Applicant's favor when the party from whom discovery is sought "is not a party to the foreign proceeding"). The other *Intel* factors, however, all weigh in IOV's favor. As to the second factor, there is no indication that the courts of the Netherlands or Gibraltar would be unreceptive to evidence obtained in the United States. Other courts have reached the same conclusion as to the Netherlands. *See In re Jud. Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-CV-0797-GMN-NJK, 2014 WL 7706908, at *3 (D. Nev. June 4, 2014) (collecting cases and noting that Dutch courts have historically been receptive to judicial assistance from courts of the United States). Additionally, the United Kingdom, of which Gibraltar is an overseas territory, has also been found to be receptive to United States judicial assistance. *See In re Emergency Ex Parte Application of Godfrey*, No. 17-21631-CV, 2018 WL 1863749, at *10 (S.D. Fla. Feb. 22,

2018), *report and recommendation adopted sub nom.*, *In re Godfrey*, No. 17-21631-CIV, 2018 WL 1859344 (S.D. Fla. Mar. 15, 2018) (noting that "[s]ome U.S. district courts have also recognized that English courts are generally receptive to § 1782 discovery."). Third, there is no indication IOV is seeking to circumvent the proof-gathering procedures or restrictions of the Netherlands or Gibraltar. Rather "IOV seeks documents for use in [the] contemplated proceedings that it may not be able to obtain from Levin via any other means." [ECF No. 1 at 12]. Additionally, IOV is not required to exhaust its options in the foreign tribunal before seeking discovery under Section 1782. *See In re: Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). Thus, this factor also favors IOV. Lastly, having reviewed IOV's proposed subpoenas, the Court finds they are neither unduly intrusive nor overly burdensome. *See generally* [ECF No. 1-2].

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Application [ECF No. 1] is **GRANTED**.

2. IOV is hereby authorized to issue and serve the subpoenas it attached to the Application [ECF No. 1-2] on Mark Levin. IOV is also authorized to serve additional follow-up subpoenas on Mark Levin or any person, corporate entity, or financial institution found or residing in this District as may be necessary to obtain the testimonial or documentary evidence described in the Petition.

3. Mark Levin is ordered to preserve all relevant and potentially relevant evidence in their possession, custody, or control until further Order from this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of June 2022.

_____
LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc: **U.S. District Judge Roy K. Altman;**

**All Counsel of Record**